**In re E.E.L. and N.L.**

C.P. of Berks County, nos. 81345 and 81346.

*Jennifer Grimes,* for Berks County Children and Youth Services.

*Sharon M. Scullin,* guardian ad litem, for E.E.L. and N.L.

*Gregory S. Ghen,* for N.L.S.

SCHMEHL, P.W., *J.,* June 3, 2010—This matter came before the court on the petitions of Berks County Children & Youth Services (BCCYS) to terminate the parental rights of N.L.S. (Father) to the children, E.E.L., date of birth June 30, 2005, and N.L., date of birth October 13, 2006.[1] The petitions to terminate Father's rights were filed on the grounds set forth in 23 Pa.C.S. §2511(a)(1), (2), (5), and (8). Following the hearing on April 26, 2010, at which Father appeared with counsel, the court terminated his rights to the children. Father filed a timely appeal.

Paragraph 2511(a)( 1 ) provides that parental rights in regard to a child may be terminated on the grounds that a "parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." Paragraph (a)(2) provides that parental rights may be terminated on the grounds that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions

---

1. J.C. (Mother) signed consents to the termination of parental rights and was not a party to the involuntary termination proceedings.

and causes of the incapacity, abuse, neglect or refusal cannot or will not he remedied by the parent." Paragraph (a)(5) provides for termination of parental rights when a "child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child." Paragraph (a)(8) provides that parental rights may be terminated on the grounds that "[t]he child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child."

"[P]arental rights may not be preserved by waiting for some more suitable financial circumstance or convenient time for the performance of parental duties and responsibilities." *In re D.J.S.,* 737 A.2d 283, 287 (Pa. Super. 1999). The long-standing law of the Commonwealth is that the inability of a parent to perform parental duties makes him or her just as parentally unfit as a parent who refuses to perform these duties. *In re B.L.W.,* 843 A.2d 380, 388 (Pa. Super. 2004). Regardless of inability or

refusal, once a parent demonstrates a failure to fulfill his or her parental duties, the child's right to fulfillment of his or her potential in a permanent, healthy, safe environment with proper parenting supersedes the parent's basic constitutional right to custody and rearing of the child. *Id.* In terminating the rights of a parent, the court must give "primary consideration to the developmental, physical, and emotional needs and welfare of the child." 23 Pa.C.S. §2511(b).

In addition to the two subject children, Mother has three other children, two older and one younger, fathered by men other than N.L.S. For a variety of reasons, BCCYS had been involved with the family prior to the birth of the two subject children. The involvement of BCCYS pertinent to E.E.L. and N.L. most recently began in April 2008 when Mother asked for assistance. Mother was facing eviction from her apartment and Father was incarcerated for drug charges. Apparently, Father was released from custody later in the month.

From April 2008 through August 2008, several safety plans were devised by BCCYS: however, the family was uncooperative. The children were not taken to appointments and there was no end to the domestic violence between all of the adults in front of the children. In fact, Mother obtained a protection from abuse order against Father in March 2008 which prohibited Father from having any contact with Mother except for arranging visitation with the children. Although the order allowed contact with the children, it appears that Father used the PFA as an excuse to not be involved or challenge Mother's prohibiting contact with the children. In August 2008, Father

was again incarcerated on charges of burglary, criminal trespassing, theft by unlawful taking, receiving stolen property and criminal mischief.[2] Shortly after Father's incarceration, BCCYS discovered another direct and flagrant violation of an established safety plan, which caused the children to be removed from the home in early September 2008.

During his incarceration, which lasted until July 2, 2009, Father kept in contact with BCCYS through phone calls and letters. Upon his release from prison, he participated in monthly casework sessions until he was again incarcerated on November 8, 2009 on charges of theft from a motor vehicle, receiving stolen property, loitering and prowling at night, criminal mischief, and receiving stolen property. A BCCYS caseworker went to Berks County Prison three times to provide casework services to Father during this last period of incarceration. Each time, Father maintained his innocence and declared a desire to have the children returned to his care. He had no plans for how he would support the children and

2. The court says "again" because Father has an extensive criminal history dating back to at least the year 2000 on charges such as possession of controlled substances, resisting arrest, driving without a license, driving an unregistered vehicle, criminal mischief, criminal trespassing, burglary, theft from motor vehicles, aggravated assault, escape, failure to comply with probation and parole, harassment, simple assault, possession of an instrument of crime, receiving stolen property, loitering and prowling at night, theft by unlawful taking and disorderly conduct. It is also noted that Father participated in Berks County's Drug and Mental Health Treatment Court program under the supervision of the undersigned judge and was unsuccessfully discharged due to a lack of motivation and failure to comply with treatment court terms and conditions.

simply stated "they've always belonged with me, their father." This statement clearly did not reflect historical reality.

In July 2009, Father completed a drug and alcohol evaluation which resulted in a recommendation of urine screens but no treatment due to Father's self-report that he had not used drugs in two years. Father was set up for once weekly urinalysis, but he attended only three screens.

Father was referred for a mental health and domestic violence assessment. It was recommended that Father participate in mental health treatment, comply with medication management, and complete a program specific to anger management and domestic violence. Father participated in only one group therapy session.

Father was offered bi-weekly visitation with the children in August 2009. He attended only four visits. During the visits, he needed prompting to play with the children rather than watch. The children did not interact with him and instead sought comfort from the visit supervisor. The last time that Father saw the children was on October 29, 2009.

The children have remained in the same foster home since October 2009, along with their older half-sister. They are attached to this family and have not asked about Father since their placement into this home. The children are doing well and there is no anticipated impairment to their adoption.

For at least the past two years, Father has done nothing to be a parent to these children. For longer than that

period of time, he has been unable to control his criminal impulses and has not participated in appropriate treatment to address his mental health and apparent drug abuse issues. During the spring and summer of 2008 he was content to allow the children to remain with Mother despite her admitted need for assistance. Even if his allegation is true that Mother did not allow contact with the children, Father never took any step toward pursuing a custody action. His course of action was to either do nothing or, to the extent motivated by a desire to contact his children, confronted Mother with only violence. The most he did for his children was during his incarceration from August 2008 to July 2009 when he reportedly inquired often about his children. When released from prison and given the opportunity to visit with his children, he needed prompting to attempt interaction with the children and required direct staff intervention throughout the visits. Furthermore, by failing to participate in required and recommended services, Father demonstrated no real motivation to have the children returned to his care. He has not demonstrated an ability or willingness to perform parental duties and has presented no plan for doing so now or in the future. Together with Father's inability to rectify the circumstances leading to the children's placement and the children's right to fulfillment of their potential in a permanent, healthy, and safe environment, it is clear that it is in the children's best interests to have Father's parental rights terminated.

For the foregoing reasons, the court entered its orders of April 26, 2010 terminating Father's rights to the children.